Gregory L. Diskant (admitted *pro hac vice*)
Eugene M. Gelernter (admitted *pro hac vice*)
Anthony C. DeCinque (admitted *pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Phone:  (212) 336-2000
Fax:     (212) 336-2222
Email:  gldiskant@pbwt.com
            emgelernter@pbwt.com
            adecinque@pbwt.com

Charles D. Hoffmann (admitted *pro hac vice*)
Sean R. Marshall (admitted *pro hac vice*)
HOFFMANN MARSHALL & STRONG LLP
116 W 23rd Street, Suite 500
New York, NY 10011
Phone:  (212) 851-8403
Fax:     (646) 741-4502
Email:  charlie@hmscounsel.com
            sean@hmscounsel.com

Kelly A. Evans (NV Bar #7691)
Chad R. Fears (NV Bar #6970)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Phone:   (702) 784-5200
Fax:      (702) 784-5252
Email:   kevans@swlaw.com
             cfears@swlaw.com

*Attorneys for Defendants LifeScan, Inc.;
LifeScan Scotland, Ltd.; and Johnson & Johnson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PHARMA TECH SOLUTIONS, INC. and DECISION IT CORP., <br><br> Plaintiffs, <br><br> vs. <br><br> LIFESCAN, INC., LIFESCAN SCOTLAND, LTD. and JOHNSON AND JOHNSON, <br><br> Defendants. | Case No. 2:16-cv-00564-RFB-PAL <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)(6)** <br><br> **DKT. NO. 34** <br><br> **ORAL ARGUMENT REQUESTED** |

## A. Introduction

Defendants submit this Reply in further support of their motion to dismiss the Complaint. When Pharma Tech's Opposition is stripped of its rhetoric and irrelevancies, its Opposition fails to identify in the Complaint—or anywhere else—any plausible scientific basis for asserting that the OneTouch system infringes the '069 and '411 patents.

It is disappointing that Pharma Tech seeks to maintain this case when LifeScan has given it documents—which Pharma Tech does not mention—conclusively establishing that its allegations are incorrect. To prevail, Pharma Tech must show that LifeScan's OneTouch system meets every element of the claims of the '069 and '411 patents, including the element that requires comparing separate measurements of analyte (i.e., glucose) concentration. Documents that LifeScan provided to Pharma Tech—including all versions of the OneTouch algorithm that have ever been used—establish unequivocally that the OneTouch system does not do this and never did. Instead, the system compares two separate measurements of electric current (which is proportional to glucose concentration). For purposes of the '069 and '411 patents, the difference is dispositive, as Pharma Tech does not dispute, and that means the OneTouch system does not infringe.

Before bringing this motion, LifeScan wrote to Pharma Tech and demonstrated that the OneTouch system does not compare separate analyte concentrations, as required by the claims of the '069 and '411 patents. *See* Dkt. No. 35-5. The algorithm governing the operation of the OneTouch system makes this clear. Pharma Tech already had that algorithm from discovery in the California Case, but LifeScan provided Pharma Tech with another copy and asked that Pharma Tech review the evidence actually in its possession. *See id.* at 1–2.

At Pharma Tech's request, LifeScan then gave Pharma Tech an additional month to respond to LifeScan's letter, so that Pharma Tech's technical expert Dr. Wang would have time to once again review the OneTouch algorithm. When Pharma Tech responded (Dkt. No. 35-6), it did not dispute (and therefore conceded) that the OneTouch algorithm in its possession compares only electric currents and not glucose concentrations. Instead, Pharma Tech said that it wanted discovery about whether LifeScan might have modified the algorithm at some point in time. *Id.* at 2–3. LifeScan then provided Pharma Tech with "[a]ll versions that have ever been used" of the OneTouch

1  algorithm, along with a declaration from the responsible LifeScan engineer explaining that the
2  algorithm had never changed in any material respect.  Dkt. No. 35-9 at 1.  By the time Pharma Tech
3  filed its Opposition to this motion, its expert Dr. Wang had a full opportunity to review all versions
4  of the algorithm.  Amazingly, he has submitted a declaration in support of Pharma Tech that does
5  not say one word about all of this evidence about how the meter actually works.  His silence speaks
6  volumes:  the OneTouch system operates pursuant to its controlling algorithm by comparing
7  currents, not concentrations, and so does not infringe.

8        In addition to the algorithms, LifeScan also offered to make the highly confidential
9  OneTouch source code (which implements the algorithm) available for review by Pharma Tech's
10 experts.  Because of the proprietary nature of the source code, under the protective order it can be
11 reviewed only at the offices of LifeScan's counsel, but LifeScan offered to find a convenient
12 location for Pharma Tech to view the code.  Dkt. No. 35-9 at 2.  Pharma Tech did nothing to arrange
13 to inspect the source code and instead simply filed its Opposition to LifeScan's motion.  If and when
14 Pharma Tech looks at the source code, it will learn that the source code faithfully implements the
15 OneTouch algorithm, so that the system compares only electric currents.  It never compares separate
16 glucose concentrations, as required by the claims of the '069 and '411 patents, and so does not
17 infringe.

18       We do not say this lightly, but it is an abuse of the litigation process for Pharma Tech to
19 maintain this action when the technical documents in its possession, and those available to it,
20 conclusively establish that its allegations are factually incorrect.  If Pharma Tech does not
21 voluntarily discontinue this suit, its pursuit of baseless claims supports an award of attorneys' fees
22 under section 285 of the Patent Act, 35 U.S.C. § 285.  *See MarcTec LLC v. Johnson & Johnson*, 664
23 F.3d 907 (Fed. Cir. 2012).

24 **B.     Rule 12(b)(6) Motions Under *Iqbal* and *Twombly***

25       **1.     *Iqbal* and *Twombly* Are Fully Applicable Here**

26       Pharma Tech is noncommittal on whether *Iqbal* and *Twombly* govern this motion.  *See* Opp.
27 4:13–20.  It cites *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-cv-0772, 2016 U.S. Dist.
28 LEXIS 5426, *7–8 n.1 (D. Nev. Jan. 15, 2016), for the proposition that "notice pleading … is

sufficient [in patent cases] even after removal of Form 18 from the Federal Rules of Civil Procedure." Opp. at 4:15–18. But *Hologram* does not stand for that proposition. That case was commenced *before* the December 1, 2015 effective date of the amendments to the Federal Rules that abrogated Form 18. For cases commenced *after* that date—such as this case—notice pleading under Form 18 "no longer provides the proper measure for the sufficiency of a complaint and the *Twombly* and *Iqbal* pleading standards apply." *RAH Color Techs., LLC v. Ricoh USA, Inc.*, No. 2:15-cv-05203, 2016 U.S. Dist. LEXIS 87871, *12–13 (E.D. Pa. July 6, 2016) (collecting cases). *Tannerite Sports, LLC v. Jerent Enterprises, LLC*, No. 6:15-cv-00180, 2016 U.S. Dist. LEXIS 57942, *4 (D. Or. May 2, 2016), which Pharma Tech also cites (Opp. at 4:18–20), so holds and it is consistent with all the other cases reaching that conclusion. We are not aware of any case reaching a different conclusion in a case commenced after December 1, 2015.

**2.     LifeScan Relies Entirely on Documents That the Court May Properly Consider**

This motion is based on: (i) the allegations of the Complaint (which are conclusory and deserve no deference); (ii) the claim charts attached to the Complaint; (iii) the '105 patent, which is referred to and quoted in the claim charts; and (iv) matters properly subject to judicial notice. The materials that form the basis for this motion all may properly be considered on a Rule 12(b)(6) motion. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008); *Drieling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006).

Other than materials in the Complaint itself, or referred to in the Complaint, the only additional documents LifeScan relied upon in support of its motion are the declarations by Dr. Meyerhoff and Dr. Wang that were filed with the Court in the California Case. These are properly subject to judicial notice. *See Reyn's Pasta Bella, LLC v. Visa LLC*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). They are relied on to show that Pharma Tech's expert Dr. Wang did not dispute the operation of the OneTouch system as explained by LifeScan's expert Dr. Meyerhoff—a fact that the district court noted in its decision in the case. *LifeScan, Inc. v. Shasta Techs., LLC*, 933 F. Supp. 2d 1243, 1254 (N.D. Cal. 2013), *rev'd on other grounds sub nom. LifeScan Scotland, Ltd. v. Shasta*

*Techs., LLC*, 734 F.3d 1361 (Fed. Cir. 2013).[1]  In his opposing declaration in this Court, Dr. Wang admits as much.  Dkt. No. 40, ¶ 19.

### 3.  The Evidence in Pharma Tech's Complaint

#### (a) Table 1 of the '105 patent

As LifeScan pointed out (Mot. at 8–11), the claim charts attached to Pharma Tech's Complaint rely on two pieces of evidence for the allegation that the OneTouch system compares concentrations (rather than currents).  The charts cite: (i) Table 1 from the '105 patent (Cplt., Ex. C at 18–19, Ex. D at 15–16), and (ii) an undated "Dear Customer" email (Cplt, Ex. C at 18–19, Ex. D at 15–16).  Of the two, only Table 1, and the patent of which it is a part, could be called technical evidence.  But now, Pharma Tech abandons reliance on Table 1 and disingenuously claims that it did not cite it as proof that the OneTouch system compares concentrations.  That is not true, as a simple examination of the claim chart demonstrates.  As LifeScan explained, the text that Pharma Tech quoted with Table 1 actually says that "***two currents were … compared***," not two concentrations.  Cplt., Ex. C at 19 (quoting the '105 patent at col. 5:46–48), Ex. D at 16 (same).  This provides no support for the allegation that the system compares concentrations and, directly contradicts it.  *See* Mot. at 9–10.

In response, Pharma Tech pretends its claim charts say something else.  Although the claim charts explicitly rely on Table 1 to demonstrate that the OneTouch system compares concentrations, and so meet the "comparing" element of the asserted claims, Pharma Tech now says that its claim charts "do ***not*** rely on Table 1" for that purpose and rely on Table 1 only as a basis for alleging "that the Accused Products … ***convert*** [an electrical current] reading into an analyte …."  Opp. at 13:24–28 (emphasis added).  This is demonstrably incorrect.  *See* Cplt., Ex. C at 18–19, Ex. D at 15–16.

---

[1]  The remaining materials about which Pharma Tech complains are not the basis for this motion.  LifeScan does not rely on the MacRae declaration in support of its motion to dismiss.  Rather, that declaration was provided for background, to apprise the Court—and put Pharma Tech on full notice—of relevant facts that strip Pharma Tech of any good faith basis to pursue its claim.  It will later be part of LifeScan's fees motion.  Separately, the prosecution histories of the asserted patents are properly subject to judicial notice.  *See Coinstar, Inc. v. Coinbank Automated Systems, Inc.*, 998 F. Supp. 1109, 1112–13 (N.D. Cal. 1998).  In any event, they were cited only to explain why Pharma Tech cannot assert a claim under the doctrine of equivalents, which Pharma Tech essentially admits.

1  LifeScan is not offering "smoke and mirrors" (Opp. at 13:23) when it points out what the claim
2  charts actually say.
3  In any event, Pharma Tech no longer relies on Table 1 or other portions of the '105 patent for
4  the proposition that the OneTouch system compares separate analyte concentrations.  Thus, the only
5  scientific basis for Pharma Tech's claim actually asserted in the Complaint admittedly does not
6  support the claim.

### (b) The "Dear Customer" Email

8  The only "[o]ther evidence" in Pharma Tech's Complaint (Opp. at 13:27) consists of a non-
9  technical and imprecise email that is not a scientific description of how the OneTouch system
10 "actually works."  *RainDance Techs., Inc. v. 10X Genomics, Inc.*, No. 15-152, 2016 U.S. Dist.
11 LEXIS 33875, *4 (D. Del. Mar. 4, 2016) (dismissing case as not providing a plausible basis for
12 patent infringement allegations, where the plaintiff relied on non-technical "promotional materials"
13 rather than evidence of how the product "actually works").  Instead of relying on, or even
14 mentioning, the OneTouch algorithm—which Pharma Tech's expert has reviewed and which
15 governs the actual operation of the OneTouch system—Pharma Tech relies on a single non-technical
16 statement directed at a lay audience, which does not purport to distinguish between comparing
17 analyte concentration and comparing electric current.  Pharma Tech's non-technical "[o]ther
18 evidence" (Opp. at 13:27) does not provide a plausible basis for its infringement allegations.
19 LifeScan discussed the "Dear Customer" email in its opening brief at pages 10:24–11:25 and
20 19:21–20:15.  Pharma Tech does not dispute that the "Dear Customer" email is a non-technical
21 document intended for a lay audience.  It is not surprising that such a communication does not draw
22 fine distinctions between comparing measurements of glucose concentration and comparing
23 measurements of electric current (which is directly proportional to glucose concentration).
24 Meanwhile, the only plausible reading of this email, particularly in light of the technical contents of
25 the '105 patent itself, is (as it says) that the OneTouch system practices the "patented . . .
26 technology" of the '105 patent by computing and comparing "the flow of electrons [i.e., the current]
27 separately."  This contradicts Pharma Tech's allegations of literal infringement, and certainly does
28 not render them plausible.

– 5 –

The "Dear Customer" email is not scientific evidence of how the OneTouch system "actually works." *Implicit Networks, Inc. v. F5 Networks, Inc.*, Case No.C10-3365, 2013 U.S. Dist. LEXIS 34984, *46 (N.D. Cal. Mar. 13, 2013). An imprecise sentence in a non-technical email is "far too slender a reed" to provide a basis for allegations of infringement under *Iqbal* and *Twombly*. *Jones v. City of New York*, No. 14-cv-0826, 2015 U.S. Dist. LEXIS 13951, *17 n.8 (E.D.N.Y. Feb. 4, 2015) ("[A] single stray comment … is far too slender a reed to support a charge of color discrimination [under *Iqbal* and *Twombly*]."). This is all the more true when technical documents that authoritatively describe how the OneTouch system actually works have been reviewed by Pharma Tech's expert, conclusively refute its allegations of infringement, and are entirely ignored in its response.

### 4. Other "Evidence" Not Cited in the Complaint

In response to this motion, Pharma Tech cites other supposed evidence that the OneTouch system compares concentrations, not currents. The non-technical evidence it cites is irrelevant on its face. More notable is the declaration of Pharma Tech's expert Dr. Wang, who has reviewed all of LifeScan algorithms and ***who says not one word about them*** to this Court, essentially admitting that they do not support a claim of infringement.

### (a) Mr. Gorsky's Statement in an Earnings Call

Pharma Tech quotes a statement in a 2009 "earnings call" by Alex Gorsky, the then-Chairman of Johnson & Johnson's Medical Devices & Diagnostics Group, that LifeScan's "double sure technology" performs "two separate glucose tests with every strip and a self-test to confirm accuracy." Opp. at 8:8–15. The "double sure technology" that Mr. Gorsky mentioned is the technology described in the '105 patent, which compares two measurements of current, not concentration. A more precise version of his statement would have been that LifeScan's "double sure technology" performs "two separate tests of electric current with every test strip and, since the current measurements are directly proportional to the glucose concentration, that self-test comparing the two current measurements confirms accuracy." Mr. Gorsky's shorthand description was fully sufficient and clear for his lay audience. But what governs the way the OneTouch system "actually works," is the OneTouch algorithm—not a non-technical statement to a lay audience in an earnings

– 6 –

1  call.  *RainDance*, 2016 U.S. Dist. LEXIS 33875, *4.  Pharma Tech does not cite the OneTouch

2  algorithm because it refutes Pharma Tech's allegations of infringement.

### (b) Exhibit C to the Schaeffer Declaration

Pharma Tech also relies on an assortment of promotional statements from various sources that are attached as Exhibit C to the Declaration of John Schaeffer.  Dkt. No. 41 at 42–62.  The vast majority of those statements come from websites of entities that are not related to LifeScan.  *E.g.*, *id.* at 43 (from www.officedepot.com); *id.* at 45 (from www.walmart.com); *id.* at 45, 47 (from www.walgreens.com); *id.* at 46 (from www.riteaid.com); *id.* at 50, 51 (from www.shoponetouch.com); *id.* at 52 (from www.discountmedicalsupplies.com); *id.* at 54 (from www.shopping.com).  The promotional statements that Pharma Tech quotes from these third-party websites do not purport to be technical descriptions of the OneTouch system, and do not provide a plausible basis for alleging infringement.  *RainDance*, 2016 U.S. Dist. LEXIS 33875,*4.

More important, almost all of the quoted statements are simply true.  Most of the statements, and almost that are attributed to LifeScan, say words to the effect that LifeScan's "DoubleSure® Technology automatically checks each blood sample twice to confirm the results."  Dkt. No. 41 at 43.  This is completely accurate and does not support a claim of infringement.  The OneTouch system takes two current readings of each blood sample, which allows it to confirm the results.  That is, it checks each blood sample twice.  These true statements about the operation of the OneTouch system provide no support for Pharma Tech's theory that the OneTouch system compares glucose concentrations rather than currents.[2]

### (c) Dr. Wang's Declaration

Most notable among Pharma Tech's "[o]ther evidence" (Opp. at 13:27) is the declaration from its expert, Dr. Wang, and his declaration is most notable for what it does not say.  Dr. Wang's

---

[2] *See*, *e.g.*, Dkt. No. 41 at 43 (from www.onetouchipp.com); *id.* at 50 (LifeScan ad) ("It measures each blood sample not once, but twice, to confirm your result."); *id.* (from www.onetouch.com) ("DoubleSure® technology automatically checks each blood sample twice."); *id.* at 54 (from www.ultra2glucosemeter.com) ("LifeScan's patented DoubleSure® Technology … automatically check[s] each blood sample a second time to confirm the blood glucose results"); *id.* at 58 (from www.onetouchultrameters.com) ("Featuring DoubleSure™ technology that checks the blood sample twice for absolute accuracy."); *id.* at 59 (from www.onetouchprofessionalproducts.com) ("DoubleSure™ Technology automatically checks each sample twice to confirm the result."); *id.* (from www.onetouchasia.com) ("Use of two working electrodes allows two identical measurements to be compared and checked, leading to accurate glucose results.").

– 7 –

1  declaration mostly confines itself to describing how the patented system works by comparing
2  concentrations.  But Dr. Wang knows how the OneTouch system works and his silence about its
3  operation is damning to Pharma Tech's case.  Dr. Wang actually reviewed the OneTouch algorithm
4  in the previous litigation and did not dispute then that it practiced the '105 patent by comparing
5  currents.  He affirms this is true in his declaration.  He claims, however, that "whether the Accused
6  Products compare currents prior to converting the currents to analyte is beside the point."  Dkt. No.
7  40, ¶ 19.  That is supposedly because, according to Dr. Wang, it is theoretically possible that the
8  OneTouch system does both—first it compares currents and then, for some inexplicable reason, it
9  might also compare concentrations.  *Id.*, ¶ 18.

10  But what is the evidence that this happens?  Dr. Wang vaguely asserts that "[o]ther evidence,
11  including but not limited to the customer service email set forth in Plaintiffs' charts, suggests that the
12  Accused Products do this at least twice [i.e., compute concentrations] and compare the result."  *Id*.
13  That is a remarkable statement.  Dr. Wang is professor of nanoengineering.  He knows that the
14  operation of an electrical device is determined by its controlling algorithm, not by an imprecise and
15  undated email written for a lay audience.  And Dr. Wang actually examined the LifeScan algorithm
16  in the previous case.  In this case, at Pharma Tech's request, LifeScan provided all of the algorithms
17  it has ever used for the OneTouch system.  LifeScan further agreed that Dr. Wang could examine
18  those algorithms under the protective order and it gave Pharma Tech the time it needed to conduct
19  that examination.  Dr. Wang does not need to cite emails that supposedly "suggest" how the
20  OneTouch System might work.  Dr. Wang knows exactly how it works—by comparing currents, not
21  concentrations.  Dr. Wang's failure to discuss the OneTouch algorithms that he has examined is an
22  admission that Pharma Tech's case is baseless.

23  Whether the Court confines itself to the evidence actually cited in the Complaint or considers
24  the "other evidence" now cited by Pharma Tech, none of it provides a plausible basis for
25  Pharma Tech's allegations of infringement.  *RainDance*, 2016 U.S. Dist. LEXIS 33875,*4 (granting
26  a motion to dismiss under *Iqbal* and *Twombly*).  Like *Atlas IP, LLP v. Exelon Corp.*, No.
27  15 C 10746, 2016 U.S. Dist. LEXIS 64571, which dismissed a patent case under *Iqbal* and *Twombly,*
28  this is a "hopeless lawsuit of precisely the sort that [*Iqbal* and *Twombly*] and amendments to the

– 8 –

1  [Federal] Rules were intended to dispose of quickly and even to deter outright." *Id.*, 2016 U.S. Dist. LEXIS 64571, *16.[3]

### 5. Pharma Tech Does Not Identify Any Claim Construction that Helps Its Position

Pharma Tech also argues that this motion is premature because the Court has not yet ruled on claim construction. That might be a credible argument if there were an identified and relevant dispute about what the claims mean. But Pharma Tech identifies no claim construction issue in this case, much less one that could help its infringement case. Accordingly, there is no reason to wait for formal proceedings on claim construction.

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012), which Pharma Tech cites (Opp. at 17:23–27), holds that courts should give claims "their broadest possible construction" on a motion under *Iqbal* and *Twombly*. *Bill of Lading*, 681 F.3d at 1343 n.13. Here, the "broadest possible construction[s]" of "concentration" and "analyte" are the standard dictionary definitions that LifeScan presented. *See* Mot. at 17 and *id.* n.12. Certainly, Pharma Tech does not identify any broader construction, and its expert Dr. Wang uses both terms in his declaration in the same sense as their standard dictionary definitions.

With Pharma Tech having failed to propose a claim construction different from the dictionary definitions that LifeScan submitted, there is no reason to wait for formal proceedings on claim construction before dismissing the Complaint. Courts often grant motions to dismiss patent cases without waiting for formal claim construction where, as here, a plaintiff fails to identify a plausible construction helping its position. *E.g.*, *Protegrity USA, Inc. v. Netskope, Inc.*, No. 15-cv-

---

[3] The cases that Pharma Tech cites do not support its position. *Hologram USA*'s holding, that the complaint there "satisfied the requirements of Form 18," 2016 U.S. Dist. LEXIS 5426, *8, is inapposite because Form 18 was abrogated by changes in the Federal Rules of Civil Procedure that became effective before the commencement of this case. *Delavau, LLC v. Corbion NV*, No. 15-1183, 2016 U.S. Dist.. LEXIS 78306 (D. N.J. June 16, 2016), turned on its specific facts, which are unlike the facts here; the district court found that the plaintiff had provided a plausible basis for asserting that the defendant made, used or sold bread (and not merely bread starter kits, as the defendant asserted). In *Max Sound Corp. v. Google, Inc.*, No.5:14-cv-04412, 2015 U.S. Dist. LEXIS 62943 (N.D. Cal. May 13, 2015), the district court rejected a defendant's effort to use a Rule 12(b)(6) motion to challenge a patent's validity under the definiteness requirement of 35 U.S.C. § 112,¶ 2, and held that a Rule 12(b)(6) motion is not the proper vehicle to "engage in a § 112,¶ 2 analysis …." *Max Sound*, 2015 U.S. Dist. LEXIS 62943, *11. This case does not involve similar facts or issues.

2515, 2015 U.S. Dist. LEXIS 142633, *7 (N.D. Cal. Oct. 19, 2015) (granting motion to dismiss without formal claim construction); *Boar's Head Corp. v. DirectApps, Inc.*, No. 14-cv-01927, 2015 U.S. Dist. LEXIS 98502, *18 (E.D. Cal. July 28, 2015) (on a motion to dismiss, "a court should look to the plaintiff to show some factual dispute requiring claim construction.") (collecting cases); *Lumen View Tech. LLC v. Findthebest.com*, 984 F. Supp. 2d 189, 204–05 (S.D.N.Y. 2013) (Cote, J.).[4]

### C. Pharma Tech Does Not Dispute the Facts that Require Dismissal of its DOE Claim

Before filing this motion, LifeScan sent Pharma Tech a letter explaining in detail that amendment-based estoppel under *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002), bars Pharma Tech from asserting infringement under the doctrine of equivalents ("DOE"). *See* Dkt. No. 35-5 at 9–14. Pharma Tech did not disagree, and conceded in its response that it would not try to defend the Complaint's allegations of infringement under the DOE. As Pharma Tech stated: "[LifeScan] need not include a discussion regarding [the DOE]" in a Rule 12(b)(6) motion because Pharma Tech "do[es] not intend to assert that the One Touch System infringes under the doctrine of equivalents in opposi[ng] [such a motion]." Dkt. No. 35-6 at 3 n.3.

Notwithstanding this concession, LifeScan demonstrated in its motion that amendment-based estoppel under *Festo* bars Pharma Tech from relying on the DOE. *See* Mot. at 21:8–22:13. Pharma Tech's Opposition does not provide any basis for disputing this, but says that Pharma Tech "reserve[s] the right to assert [infringement under the DOE] in this litigation at a later date." Opp. at

---

[4] The cases Pharma Tech cites do not support its position. In three of those cases, the plaintiffs raised genuine disputes on claim construction by offering constructions that were different from—and broader than—the claim constructions that the movants offered. *Anglefix Tech., LLC v. NuVasive, Inc.*, No. 13-cv-983, 2014 U.S. Dist. LEXIS 5291, *5 (S.D. Cal. Jan. 14, 2014) (plaintiff "vigorously disputes [the movant's] constructions on several grounds"); *Fujitsu Ltd. v. Belkin, Int'l, Inc*, 782 F. Supp. 2d 868, 888–89 (N.D. Cal. 2011) (plaintiff "argued that [the movants] have erroneously interpreted the Ozawa Patent's claims."); *Yangaroo, Inc. v. Destiny Media Techs., Inc.*, No. 09-C-462, 2009 U.S. Dist. LEXIS 82052, *6–7 (E.D. Wis. Aug. 31, 2009) ("Yangaroo disputes Destiny's construction of its patent"). Here, in contrast, Pharma Tech has not offered any construction of any claim term, so there is no claim construction dispute to be decided. In *Eon Corp. IP Holdings v. FLO TV Inc.*, 802 F. Supp. 2d 527 (D. Del. 2011), the plaintiff advocated a different construction than the movant, but the plaintiff's construction could not salvage its complaint and the court granted the motion to dismiss. *Id.* at 535 ("Even if the claims at issue are read in the light most favorable to plaintiff … , plaintiff's complaint is still insufficient …."). In the remaining case, *Actus, LLC v. Bank of Am. Corp.*, No. 2-09-cv-102, 2010 U.S. Dist. LEXIS 11398, *7–8 (E.D. Tex. Feb. 10, 2010), the defendant proposed a narrow construction, and the district court applied a standard that was abrogated by the changes in the Federal Rules that became effective on December 1, 2015.

1  15:27–28 n.8.  This "purported "reservation of rights" is meaningless.  LifeScan has moved to

2  dismiss, *inter alia*, Pharma Tech's DOE claims.  If Pharma Tech had a "viable basis in law or fact"

3  for defending its allegations of infringement under the DOE, "now is the time to raise it."  *Murray v.*

4  *Holiday Isle, LLC*, 620 F. Supp. 2d 1302, 1308 n.6 (S.D. Ala. 2009).  Pharma Tech has not raised

5  any basis for disputing that it is barred under *Festo* from alleging infringement under the DOE.  Its

6  allegations (if any) under the DOE should be dismissed.

7  **D.    If the Complaint is Not Dismissed, this Court Should Entertain a Motion for**

8  **        Summary Judgment After Limited Discovery**

9  Pharma Tech asks that it be given permission to replead if this Court finds its Complaint

10 deficient under *Iqbal* and *Twombly*.  Opp. at 18:12–17.  A different course is appropriate here if the

11 Court is not inclined simply to dismiss the Complaint.

12 Instead of giving Pharma Tech leave to replead—or allowing it to pursue full discovery if

13 this motion is denied—it would better serve the interests of justice and judicial economy to allow

14 only limited discovery on whether the OneTouch system actually compares separate glucose

15 concentrations as required by the claims of the '069 and '411 patents.  Following limited discovery

16 on that issue—which will confirm noninfringement—LifeScan could then move for summary

17 judgment of noninfringement.  This Court took this approach recently, in *Wells v. Hartford Life &*

18 *Accident Ins. Co.*, No. 2:16-cv-0056, 2016 U.S. Dist. LEXIS 106266 (D. Nev. Aug. 10, 2016), when

19 it denied a motion to dismiss, but limited discovery to "[a] distinct, narrowly focused factual issue

20 readily subject to targeted discovery and resolution on a motion for summary judgment."  *Id.* at \*7–

21 8; *see also Lorona v. Ariz. Summit Law School, LLC*, No. cv-15-00972, 2016 U.S. Dist. LEXIS

22 65527, \*17 (D. Ariz. May 17, 2016) ("allow[ing] limited discovery on [a discrete] issue" followed

23 by "an opportunity for a summary judgment motion").  Limiting discovery in this fashion, as a

24 prelude to summary judgment, would conserve the resources of the parties and the Court, and

25 provide a fair way to bring this baseless case to its well-deserved conclusion.

26 Very little discovery is needed here.  LifeScan already has produced to Pharma Tech all

27 iterations of the OneTouch algorithm, and has made the source code available for review by

28 Pharma Tech's expert under the protective order.  The only additional discovery needed to resolve

this case on summary judgment would be: (1) a deposition of the LifeScan employee most knowledgeable about the algorithm, the source code, and the operation of the OneTouch system (Mr. MacRae); and (2) expert discovery about whether the OneTouch system "compares" separate glucose concentration measurements, as required by the claims of the '069 and '411 patents. No other discovery is needed or appropriate to resolve this case on summary judgment.[5]

## CONCLUSION

For the reasons stated above and in LifeScan's Memorandum of Points and Authorities, this Court should grant LifeScan's motion to dismiss the Complaint under *Iqbal* and *Twombly*.

If the Complaint is not dismissed, this Court should permit only limited discovery on the question whether the OneTouch system performs the patents' step of comparing two separate glucose concentrations and should then entertain a motion for summary judgment on that issue.

Dated:  September 19, 2016

| | |
|---|---|
| PATTERSON BELKNAP WEBB & TYLER LLP<br>Gregory Diskant<br>Eugene M. Gelernter<br>Anthony C. DeCinque<br><br>HOFFMANN MARSHALL & STRONG LLP<br>Charles D. Hoffmann<br>Sean R. Marshall | SNELL & WILMER L.L.P.<br><br>*/s/ Chad R. Fears*<br>Chad R. Fears<br>Kelly R. Evans |

*Attorneys for Defendants LifeScan, Inc.;*
*LifeScan Scotland, Ltd.; and Johnson & Johnson*

---

[5] Pharma Tech argues (Opp. at 8:17–19) that is "entitled to conduct discovery" on "why" Mr. Gorsky—who now is C.E.O. of Johnson & Johnson—supposedly "made misrepresentations to its shareholders" in the 3Q 2009 earnings call, when he stated that the OneTouch system "perform[s] two separate glucose tests with every strip." As discussed above (at 6:17–7:2), that sentence was a generally accurate, albeit imprecise, description of how the OneTouch system performs two separate current measurements, which are directly proportional to glucose concentrations. Mr. Gorsky's choice of words in an earnings call to analysts has no bearing on any issue in this patent infringement case. As best we can tell, Pharma Tech only wants to depose Mr. Gorsky to "abuse or harass[]" the C.E.O. of Johnson & Johnson, the multi-national corporation that is LifeScan's parent. *Moyle v. Liberty Mut. Retirement Benefit Plan*, No. 10-cv-2179, 2012 U.S. Dist. LEXIS 155527, *8 (S.D. Cal. Oct. 30, 2012). Courts are sensitive to guard against this kind of abuse. Any effort by Pharma Tech to depose Johnson & Johnson's C.E.O. would be barred by the "apex doctrine," which requires a party seeking to depose a "high level" corporate official to show that he or she "'(1) has unique non-repetitive firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery … have been exhausted without success.'" *City of Sterling Hts. General Employees' Retirement Sys. v. Prudential Financial, Inc.*, No. 2:15-mc-0146, 2015 U.S. Dist. LEXIS 171904, *5 (E.D. Cal. Dec. 15, 2015) (citation omitted). Pharma Tech could not possibly meet that burden here.

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury that the foregoing **Reply in Support of Defendants' Motion to Dismiss the Complaint Under Rule 12(b)(6)** was electronically filed with the Clerk of the Court using the CM/ECF service. All parties to this case are registered with the CM/ECF service, which will provide copies to all counsel of record.

*/s/ Anthony DeCinque*
Anthony DeCinque