──────────────2:16-cv-00564-RFB-PAL──────────────

1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF NEVADA

3

4  PHARMA TECH SOLUTIONS, INC.   )
   and DECISION IT CORP.,        )  Case No. 2:16-cv-00564-RFB-PAL
5                                )
                   Plaintiffs,   )  Las Vegas, Nevada
6                                )  Wednesday, December 6, 2017
         vs.                     )  10:12 a.m.
7                                )
   LIFESCAN, INC., LIFESCAN      )  MOTIONS HEARING
8  SCOTLAND, LTD. and JOHNSON    )
   AND JOHNSON,                  )
9                                )
                   Defendants.
10 _____

11

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS

14         THE HONORABLE RICHARD F. BOULWARE, II,
15               UNITED STATES DISTRICT JUDGE

16

17

18  APPEARANCES:      See next page

19

20

21
    COURT REPORTER:     Patricia L. Ganci, RMR, CRR
22                      United States District Court
                        333 Las Vegas Boulevard South, Room 1334
23                      Las Vegas, Nevada  89101

24  Proceedings reported by machine shorthand, transcript produced
    by computer-aided transcription.
25

```
                         ─────2:16-cv-00564-RFB-PAL─────
```

```
 1   APPEARANCES:

 2   For the Plaintiffs:
            MARK J. CONNOT, ESQ.
 3          FOX ROTHSCHILD, LLP
            1980 Festival Plaza Drive, Suite 700
 4          Las Vegas, Nevada 89135
            (702) 262-6899
 5
            WILLIAM ALAN RUDY, ESQ.
 6          FOX ROTHSCHILD, LLP
            1225 17th Street, Suite 2200
 7          Denver, Colorado 80202
            (303) 292-1200
 8
            JEFF GRANT, ESQ.
 9          FOX ROTHSCHILD, LLP
            1800 Century Park East, Suite 300
10          Los Angeles, California 90067
            (310) 598-4150
11
12   For the Defendants:
            GREGORY L. DISKANT, ESQ.
13          EUGENE GELERNTER, ESQ.
            PATTERSON BELKNAP WEBB & TYLER, LLP
14          1133 Avenue of the Americas
            New York, New York 10036
15          (212) 336-2000
16          CHARLES HOFFMANN, ESQ.
            HOFFMANN MARSHALL STRONG, LLP
17          116 W. 23rd St, Suite 500
            New York, New York 10011
18          (646) 741-4501
19
20
21
22
23
24
25
```

———————————————— 2:16-cv-00564-RFB-PAL ————————————————

1          LAS VEGAS, NEVADA; WEDNESDAY, DECEMBER 6, 2017; 10:12 A.M.

2                              --oOo--

3                        P R O C E E D I N G S

4          THE COURT:  Please be seated.

5          COURTROOM ADMINISTRATOR:  Now calling Pharma Tech

6   Solutions, Inc., et al., versus Lifescan, Incorporated, et al.,

7   Case No. 2:16-cv-00564-RFB-PAL.  This is the time for the

8   hearing regarding Docket 67, motion for summary judgment; Docket

9   68, sealed motion to seal certain exhibits; and Docket 70,

10  motion to seal exhibits regarding Document 69.

11          Starting with counsel for plaintiff, please note your

12  appearance for the record.

13          MR. RUDY:  William Rudy, Your Honor, for Pharma Tech,

14  and my colleagues, Jeff Grant and Mark Connot, from Fox

15  Rothschild.

16          THE COURT:  Good morning.

17          MR. DISKANT:  Good morning, Your Honor.  I'm Greg

18  Diskant on behalf of the defendant, with my colleagues, Charlie

19  Hoffmann and Jean Gelernter.

20          MR. HOFFMANN:  Good morning, Your Honor.

21          THE COURT:  Good morning.

22          Okay.  So we are here on the motion for summary

23  judgment.  We also have these motions to seal which I'm going to

24  grant.  I don't know which -- what numbers are they?

25          (Court conferring with courtroom administrator.)

—2:16-cv-00564-RFB-PAL—

1          THE COURT:  68.  Okay.  I'll grant that.

2          So who is here -- going to argue for the plaintiff --

3          MR. RUDY:  William Rudy, Your Honor.

4          THE COURT:  -- against this motion for summary

5 judgment?

6          MR. RUDY:  Yes.  William Rudy.

7          THE COURT:  Why don't you come up to the podium here on

8 the left.

9          And you can raise that.  There's a button there on the

10 left.

11          MR. RUDY:  Thank you.

12          THE COURT:  Oh.  Maybe it's not plugged in.

13          MR. RUDY:  I think it's okay.

14          (Court conferring with court reporter.)

15          THE COURT:  So, I'm sorry, it's Mr.?

16          MR. RUDY:  Rudy.

17          THE COURT:  Mr. Rudy, I have one first question for

18 you, which is that you make this reference in your briefs about

19 there being disputed issues of fact as if somehow the issue of

20 estoppel, prosecution history estoppel, should be decided by a

21 jury, which I'm a little confused by.

22          MR. RUDY:  No, we're not -- we're not.

23          THE COURT:  If it's based upon the intrinsic evidence

24 and in particular where it's based upon an exception, right, to

25 the presumption in Festo, I don't even know how that would be

———2:16-cv-00564-RFB-PAL———

1  determined by a jury, and particularly in this case where a lot

2  of it's coming down to what the formula in White does or doesn't

3  mean as an equation.

4         MR. RUDY:  Totally agree.

5         THE COURT:  I'm not sure that the jury would decide

6  that.

7         MR. RUDY:  If we led you to that conclusion, it was by

8  mistake.

9         THE COURT:  Well, there's some reference into like

10  genuine issues of disputed fact, and that's usually language

11  that's used to suggest that the Court should deny the motion

12  because of the dispute.  Whereas, I find that there can be a

13  dispute, but in the context of deciding whether it's claim-based

14  or argument-based estoppel, the Court has to make that

15  determination based upon the intrinsic evidence of the

16  prosecution history, right?

17         MR. RUDY:  Right.  Totally agree, yes.

18         THE COURT:  Okay.  All right.  So let's sort of cut to

19  the chase.  Two questions.  How is the White equation as it

20  relates to electric current ratios not an equivalent to the

21  defendant's comparison of electric currents to place them within

22  a percentage to determine accuracy?  Because to me that's the

23  central question here, and that's the very narrow, tangentially

24  related or not, window through which you all have to, it seems

25  to me, go in order to overcome, which you acknowledge, the

————2:16-cv-00564-RFB-PAL————

1    presumption as relates to what occurred in terms of the

2    amendments and the arguments here.

3            MR. RUDY:  To answer that question, I'd like to bring

4    up some slides, if I could, Your Honor --

5            THE COURT:  Sure.

6            MR. RUDY:  -- on the PowerPoint.

7            If we could bring up 55, Mr. Grant.

8            So, Your Honor, shown on the PowerPoint on the screen

9    is the equation I think you refer to in White.  And I note that

10   White discloses an algorithm that creates a ratio of currents,

11   i1 over i2 on the far left, and compares those not to other

12   currents, but compares that ratio to the square root of time

13   ratio.

14           THE COURT:  But it's based upon multiple current

15   measurements, right, at different times, right.  So it's not one

16   current.  I'm sorry.  It's different measurements at different

17   times.  So it has the Cottrell currents, if I'm saying that

18   correctly, measured at two succeeding times, correct?

19           MR. RUDY:  That is correct.

20           THE COURT:  And so the question is, in this case, the

21   alleged infringing product also measures current at different

22   times, right?

23           MR. RUDY:  The accused product?

24           THE COURT:  Yes.

25           MR. RUDY:  Yes, from two different electrodes.

——— 2:16-cv-00564-RFB-PAL ———

1          THE COURT:  Right.

2          MR. RUDY:  Two times, two different electrodes.

3          THE COURT:  Right.

4          MR. RUDY:  Yes.  This one is one electrode.

5          THE COURT:  Right.

6          MR. RUDY:  Yes.

7          THE COURT:  And then they make a -- in the accused

8  product they make a comparison based upon that -- those

9  different measurements.  And I guess other than the fact that

10  their method of sort of comparing the measurements and how they

11  determine the accuracy is clearly different, otherwise it would

12  just be a White comparison, why isn't that equivalent when it

13  focuses on two things, the current measurements and differences

14  in the measurements at different times?  Why should I not

15  understand that to be equivalent?

16          MR. RUDY:  If we could bring up the

17  second-from-the-last slide, Mr. Grant.

18          This came up during the deposition of their expert,

19  Smith.  And I raised this point with Dr. Smith.  And up on the

20  screen now is Slide 112.  On the far left is the White equation.

21  In the middle is the comparison algorithm used in their

22  software, which compares first current -- which is an equation

23  that takes the first current minus the second current at a

24  second time divided by the first current and compares that to a

25  number; in this case, it's 20.

1          And I asked -- during the deposition I created a -- I

2     took that equation out of their algorithm and expressed it in

3     terms of i1 over i2 and generated an algebraic expression, i1

4     over i2, which generated 1 over the quantity 1 minus k.  And I

5     asked Dr. Smith first off did I derive that equation correctly,

6     and he said yes.  And I said, Are these the same equations?

7          And in the briefing we indicated what he said, and he

8     said, They're quite different.  One equation -- the White

9     equation has four variables.  The equation you drew, which is

10    the current comparison in the accused product expressed i1 over

11    i2 --

12          THE COURT:  Why does that matter?

13          MR. RUDY:  Well, because it leads to a completely

14    nonequivalent result.

15          THE COURT:  Okay.  Right.  Well, of course it has to

16    because, otherwise, they would be using White's patent, right.

17    The fact that it leads to a nonequivalent result doesn't mean

18    that the methodology isn't potentially equivalent, right?

19    That's what it means to be equivalent, right, which is that you

20    have an essentially similar or very similar type of methodology

21    to what would be in the patent.

22          And so obviously their equations are going to be

23    different, but what I don't understand is why that matters.  I

24    mean, you can actually have equivalent processes or claims or

25    inventions, right, but have different formulas, right?

———— 2:16-cv-00564-RFB-PAL ————

1          MR. RUDY:  No, and the reason is -- here's why, Your

2     Honor.  If --

3          THE COURT:  Are you saying that can never happen or

4     you're saying it doesn't happen in this case?

5          MR. RUDY:  In this case it didn't happen.

6          THE COURT:  All right.  So --

7          MR. RUDY:  So, here, this is a -- some mischief is

8     going on, we believe, because if they're allowed to move away

9     from a definition of the equivalent that includes the critical

10    features of the accused product, that is, a first current

11    measured at a first time compared to a second current measured

12    at a second time, and broadly generalize that to anything that

13    relies on current or anything that is based on current, it

14    obliterates doctrine of equivalents altogether because you can

15    always --

16         THE COURT:  No, no, no.  What we're talk -- let's be

17    clear.  What we're talking about is overcoming Festo --

18    presumption from Festo.

19         MR. RUDY:  Yes.

20         THE COURT:  That's different than me construing their

21    product and what it is, right?

22         MR. RUDY:  Right.

23         THE COURT:  So I think we need to be clear -- careful

24    about saying, Well, I'm obliterating doctrine of equivalents.

25    That's not what I'm saying.

2:16-cv-00564-RFB-PAL

1          We have amendments that occurred.  We have arguments
2   that occurred.  You're aware of the law as it relates to what
3   presumption that creates between what's been basically disavowed
4   between the original claim, right, and the amended claim.  And
5   we're really just talking about that.
6          MR. RUDY:  Okay.
7          THE COURT:  Right?
8          MR. RUDY:  Yes.
9          THE COURT:  So why would my ruling, to the extent I
10  considered ruling for them, not be limited to whether or not
11  you'd overcome the presumption as it relates to being
12  tangentially related?
13         MR. RUDY:  That is --
14         THE COURT:  That's your argument.  I mean, I'm not --
15  my ruling wouldn't be saying anything else beyond that, right?
16         MR. RUDY:  Yes.  So the question is whether the reason
17  for the amendment that cited White, which was the September 1999
18  amendment --
19         THE COURT:  Right.
20         MR. RUDY:  -- was no more than tangentially related to
21  the equivalent.  Now, it has some relationship as you indicate
22  because both rely on current, but it's tangential.  That's our
23  position, Your Honor.  It's no more than tangentially -- the
24  reason for the amendment is no more than tangentially related to
25  a comparison of current that's used in the accused's products,

—— 2:16-cv-00564-RFB-PAL ——

1  and --

2        THE COURT:  Because they're not equivalent.  Because

3  you're saying two things and I want to make sure I'm

4  understanding that.  Are you saying that it would -- it would be

5  tangentially related if their formula was more similar to

6  White's formula?

7        MR. RUDY:  Not just more similar, but if it included

8  critical features of the accused product.  That's what I'm

9  saying, yes.

10        THE COURT:  Okay.  So I just want to make sure I'm

11  understanding your argument.  Your argument is that it's not

12  tangentially related because it's missing critical elements as

13  relates to this formula, even though there's some similarities

14  as it relates to measurement of Cottrell currents at different

15  times.

16        MR. RUDY:  That's correct, Your Honor.  That's a fair

17  statement of --

18        THE COURT:  That's basically your argument, right?

19        MR. RUDY:  That's correct, yes.

20        THE COURT:  Is there anything else about the argument

21  that I'm missing?  Because that's -- I mean, there's a lot

22  that's in the briefs, but it seems to me it comes down to this

23  point.  And, quite honestly, I also think that there's enough

24  overlap and similarity and relationship between the '069 and

25  the '411 patents that I don't know that we need to be talking

————— 2:16-cv-00564-RFB-PAL —————

 1   about the difference.

 2           MR. RUDY:  We don't.

 3           THE COURT:  And so to me the focus is on this

 4   particular issue, which is is the equation and the process

 5   outlined as in relation to the accused product the equivalent of

 6   what the White formula is.  Because if I find that it more or

 7   less is, then you lose.  If I find that it isn't, then you

 8   don't, right?

 9           MR. RUDY:  Yes.  Right.

10           THE COURT:  Okay.  So is there anything else you wanted

11   to add on that particular issue?  Because you've raised a

12   somewhat technical argument as relates to the formula that I

13   want to make sure that I understand.  So I want you to tell it

14   to me again because, really, it comes down to you saying the

15   formulas are so different and the process of measuring the

16   currents is so different that they can't be equivalent, right?

17           MR. RUDY:  Yes, there is one other very important

18   thing, Your Honor.

19           THE COURT:  Okay.  So why don't we start with that

20   first part of it, and then you can get to the very important

21   thing.  Or is that in relation to what I just asked you?

22           MR. RUDY:  It's in relation to what you just asked.

23           THE COURT:  Okay.  Go ahead.

24           MR. RUDY:  So if they're allowed to -- and I think it's

25   in relation to what you just asked.

—2:16-cv-00564-RFB-PAL—

1          THE COURT:  That's all right.

2          MR. RUDY:  If they're allowed to sidestep the critical

3   features of the accused product, which are the measurement of

4   the first current at a first time compared to a measurement of a

5   second current at a second time and comparing that to some

6   constant, that flies in the face of what they argued in their

7   defense of literal infringement.  When they defined their

8   equivalent or their accused product in literal infringement,

9   they did exactly what I'm saying.  They said, We take two

10  current reads from two different electrodes at two different

11  times and compare them.  And that is not at all what's going on

12  in White in --

13          THE COURT:  And White is, as you understand it, that's

14  what?  Takes two current readings, same electrode.

15          MR. RUDY:  Yes.

16          THE COURT:  And that's the difference.

17          MR. RUDY:  And it doesn't compare those two current

18  readings.

19          THE COURT:  It has a ratio equation, right, that's

20  here.

21          MR. RUDY:  But the two current -- just in spite of the

22  fact that it creates a ratio of currents, those currents are not

23  compared to one another.

24          THE COURT:  I'm sorry.  Those -- no, they're not.

25  Well, when you say they're not compared, they -- they're used in

---
-2:16-cv-00564-RFB-PAL-
---

1  the ratio formula.

2          MR. RUDY:  They are used and compared to a time

3  component.  The time component is the square root of $t2$ divided

4  by the square root of $t1$.

5          THE COURT:  Right.

6          MR. RUDY:  They're not --

7          THE COURT:  So when you take them -- I mean, comparison

8  is a -- I think we have to be careful about how we use that

9  term.  We have lots of formulas here.

10         MR. RUDY:  Right.

11         THE COURT:  And so there are different types of

12 mathematical processes that are happening here.

13         MR. RUDY:  Right.

14         THE COURT:  And so I want to -- it appears to me that

15 your product actually probably is the closest to doing what

16 would be a direct comparison, as we understand the word

17 comparison, in contrast to what occurs in the accused product

18 and in White where the formula seems slightly different than a

19 direct one-to-one comparison as to the range of the reading,

20 right?  Because you do a concentration comparison.

21         MR. RUDY:  Yes, we do a concentration comparison.

22 That's correct.

23         THE COURT:  And that's more of a direct comparison of

24 one number to another number to see if it fits within a

25 prescribed range as to the accuracy, correct?

1           MR. RUDY:  I think it's the equivalent of --

2           THE COURT:  I know you think -- okay.  That's a legal

3   determination.  I'm just trying to understand the process.

4           MR. RUDY:  I didn't mean it in terms of a legal

5   equivalent.  I'm saying the comparison done of the current is

6   the same thing as the comparison done of the concentration.

7           THE COURT:  Why is that?

8           MR. RUDY:  And that's because they are proportional to

9   one another.  And even in their motion to dismiss they admit

10  that one is proportional to the other.  If I may put on the

11  ELMO, Your Honor, a figure from the '069 patent --

12          THE COURT:  Right, but it can't just be that they're so

13  related that it doesn't matter whether you're measuring

14  concentration or current because then, otherwise, you wouldn't

15  have gotten your patent either, right?

16          MR. RUDY:  That's correct.  Not that related, but they

17  are --

18          THE COURT:  So, I mean, they may be proportional, but

19  their relationship matters and is different enough that you can

20  come up with different equations or processes measuring

21  concentration versus current that are significantly different

22  such that they can be recognized as patentable, right?

23          MR. RUDY:  In the abstract, right.  Yes.

24          THE COURT:  I mean, so this is not as if we're --

25  you're saying, Well, current to concentrate -- concentration is

——2:16-cv-00564-RFB-PAL——

1   the same thing as miles to kilometers.

2          MR. RUDY:  Oh, yeah.  We're kind of saying that.  Yes,

3   Your Honor.

4          THE COURT:  Okay.  But then you're saying, Okay.  It is

5   that, but you're saying, But what you do with that information

6   in terms of the equation matters and that's patentable.  Is that

7   what you're saying?  Because, otherwise, you couldn't get your

8   patent either, right.  If it was just the case that it was just

9   about current measurement and it didn't matter which equation

10  you used, then White would have been --

11         MR. RUDY:  Blocked.

12         THE COURT:  -- prior art and basically you wouldn't

13  have been able to get your patent.

14         MR. RUDY:  That's correct.  That's correct.

15         THE COURT:  So your argument is that there is a direct

16  relationship between current and concentration or concentrate,

17  and what's patentable is what you do with both of the

18  measurements and the relationship.

19         MR. RUDY:  Yes.

20         THE COURT:  What equation you may use to try to

21  establish the accuracy, which seems to be the main issue or

22  selling point for these inventions, is the fact that people will

23  say, My invention is more accurate than the other invention or

24  it has a high level of reliability or accuracy that can be

25  depended upon by individuals who use these strips.

─────────────── 2:16-cv-00564-RFB-PAL ───────────────

1           So I'm not sure, Mr. Rudy, I think I might have cut you

2    off, though.  Again, I wanted to make sure I had heard all of

3    your arguments as relates to this particular issue because it

4    does seem to me it really comes down to how I understand whether

5    or not the accused product or equation is equivalent to more or

6    less what White has outlined here.

7           Was there something else you want to add?

8           MR. RUDY:  Well, only that in the briefing they took a

9    position that the amendments we're talking about right now are

10   no never mind.

11          THE COURT:  I'm sorry.  I couldn't hear you.

12          MR. RUDY:  Are no never mind to their motion.  They

13   wanted the Court to focus on the October 1997 amendment only.

14   Later amendments that included argument over this Equation 5 in

15   White they said were not relevant.  We think they are, as the

16   Court seems to understand.

17          But back --

18          THE COURT:  Well, I think they're all relevant.

19          MR. RUDY:  They're all relevant.

20          THE COURT:  Up until the time that there's an

21   allowability determination.

22          MR. RUDY:  That's correct.

23          THE COURT:  Right, right.  And then we have comments

24   from the Examiner so we -- I think that they're all relevant.

25   Now, how much weight I give to them I think is based upon what

────────────── 2:16-cv-00564-RFB-PAL ──────────────

1   they say, but I do think that they're all relevant.  I do think

2   that I'm going to consider them all, and I'm going to consider

3   the issue about the argument-based estoppel as well as it

4   relates to what was argued.

5         And so I just want to be clear.  You dispute, it seems

6   to me, this idea that's advanced by the defendants that there is

7   a significant difference in terms of measuring current versus

8   measuring, I want to say I'm right -- I'm saying this right,

9   analyte concentrate.  Am I saying that right?  What is the --

10   what's the correct term?  I want to make sure I'm ...

11         MR. RUDY:  Analyte concentration is ...

12         THE COURT:  Analyte concentration.

13         MR. RUDY:  Yeah, right.

14         THE COURT:  You're not arguing that analyte

15   concentration and measurement of current are so synonymous that

16   you can't patent separate occasions that relate to those two

17   different categories of measurement?

18         MR. RUDY:  That is -- with respect to patentability,

19   we're not arguing that.  That's correct.

20         THE COURT:  Okay.

21         MR. RUDY:  But we are arguing that the target of the

22   amendment in terms of the prior art that was being

23   distinguished, and that equation, are all important here.  And

24   that equation we don't think can simply be said to be something

25   that relies on current.  Therefore, because the accused product

—2:16-cv-00564-RFB-PAL—

1  relies on current, they involve the same aspect of the invention

2  and, therefore, the exception isn't triggered.  That we

3  absolutely disagree with, and we disagree with it because it

4  uses the improper definition of an equivalent.

5        In the Smith report he started out using the proper

6  definition of an equivalent, and that is two currents at two

7  different times and they're compared.  And the conclusions he

8  reached in his report, of which there were five, were all

9  debunked.  We see them nowhere in this briefing.  That was the

10  proper definition for equivalent, and they moved away from it

11  because it was a flop.

12        THE COURT:  Which -- I'm sorry.  Which you think the

13  proper definition for equivalent in this context again is what?

14        MR. RUDY:  Is measuring a first current and a second

15  current and comparing those currents to determine whether

16  they're within a prescribed range.  And that definition was

17  conceded by the expert, Smith, not to be found in the prior art.

18  He conceded it up and down, and his concessions appear in the

19  brief repeatedly.  He said they were not the same thing.

20        And we think the Court --

21        THE COURT:  Well, there's a difference between not

22  being prior art and not being equivalent, right.  That's not

23  necessarily the same thing, right.  You can have something

24  that's not in the prior art, but could -- I mean, if it's in the

25  prior art, technically it may not be equivalent, right.  So the

——— 2:16-cv-00564-RFB-PAL ———

1  fact that it's not in the prior art doesn't mean it's not

2  equivalent.  They're arguing --

3        MR. RUDY:  It's not -- it's non-dispositive.  That's

4  correct, Your Honor, but if it's not in the prior art, there's

5  no reason -- if the accused system as defined by Smith in

6  paragraph 79 of his report is not found in the prior art, then

7  the reasons for our amendment cannot be said to be related to

8  the accused system, the equivalent.  They are not related.  They

9  are no more than tangentially related.  There's some similarity

10  because they both use currents, but it's only a tangential

11  relationship.  And that's all important we think in this

12  evaluation.

13        THE COURT:  So how do I determine that?  How do I

14  really decide that measurement -- that the difference between

15  the White formula in terms of how it measures the ratios across

16  the one electrode at different times and the measurement of the

17  currents across the two electrodes at different times with the

18  different formula, how do I determine that that's actually

19  fundamentally different in terms of consideration of the art?  I

20  mean, I have to be able to make that determination.  You're both

21  looking at processes that you don't really dispute the nature of

22  them or how they operate.  You're basically saying from

23  different perspectives -- you're saying these are very

24  different, right.  And they're saying they're not.

25        MR. RUDY:  Well, the "these" that we're talking about

——2:16-cv-00564-RFB-PAL——

1   are different definitions.  We ask Smith, Can these equations,

2   the Smith Equation 5 and paragraph 79, Smith's definition for

3   the accused product, be substituted one for the other?  And he

4   said no.

5           THE COURT:  But which -- can which equation be

6   substituted one for the other?

7           MR. RUDY:  Smith's definition of the equivalent, the

8   accused system.

9           THE COURT:  Right.

10          MR. RUDY:  Paragraph 79.

11          THE COURT:  Right.

12          MR. RUDY:  Could that be substituted for Equation 5 in

13  White.  And he said, No, one has four variables.  The other has

14  two.  He drew several differences.

15          Now, he said something kind of goofy at one point --

16          THE COURT:  And you're saying that that's enough for me

17  to find that they're not equivalent.

18          MR. RUDY:  Yes.

19          THE COURT:  Because they have to be able to be

20  substituted formulas.  Is that --

21          MR. RUDY:  Well, it's certainly a point to be -- to

22  weigh.

23          THE COURT:  I'm not saying it's not a point to be

24  weighted.  I'm trying to make sure I get at your argument about

25  what the definition of equivalent is as it relates to equations

—————— 2:16-cv-00564-RFB-PAL ——————

 1  in the context of measuring current, because I have to try to

 2  figure out --

 3          MR. RUDY:  Sure.

 4          THE COURT:  -- how equivalent they are, not using the

 5  legal term --

 6          MR. RUDY:  Yes.

 7          THE COURT:  -- to make this determination, right?

 8          MR. RUDY:  And they're almost not equivalent at all.

 9          THE COURT:  Right.  But how do I decide that?  That's

10  what I'm saying to you.  Where do I get that from?  You're

11  saying that I should look at the expert testimony and parse

12  that, and then if I did that, I would see that the experts find

13  that the equations and their processes, sort of what they

14  measure, are so different that they could not be considered to

15  be what we understand to be equivalent under patent law.

16          MR. RUDY:  And involve different aspects therefore of

17  the invention and, thus, triggering the exception.

18          And here's one other aspect of this.  We looked for

19  case law on this point of defining the equivalent and found

20  none.  To what extent could defendants take liberties with the

21  definition of the equivalent?  We found no case law and we found

22  none we think because it's a rare situation, maybe a case of

23  first impression, where the DOE analysis is divorced from the

24  file history estoppel analysis.  Here, file history estoppel was

25  placed first.

—2:16-cv-00564-RFB-PAL—

1          And if they're normally done in tandem, the definition

2     of the equivalent used in the defense of doctrine of equivalent

3     would also be used in the file history estoppel evaluation.

4          THE COURT:  So let me ask you this other question which

5     is somewhat related; because the other part of this is what your

6     client may have actually disavowed, right.

7          MR. RUDY:  Yes.

8          THE COURT:  Let's say your client disavowed all

9     equations as it relates to measuring current.  Then that would

10    be dispositive, too.

11         MR. RUDY:  That would.  That did not happen, though.

12         THE COURT:  Okay.  I'm not -- I know you're not saying

13    that it did.  I want to make sure we're starting off at the same

14    place.

15         And what you're saying is the reference to White

16    limited the ground as it relates to what your client was

17    disavowing or disclaiming to measurements regarding electric

18    current that were the equivalent of White.

19         MR. RUDY:  Yes, or White itself.

20         THE COURT:  Or White -- right.

21         MR. RUDY:  Yes.

22         THE COURT:  Okay.  All right.  Thank you, Mr. Rudy.  I

23    appreciate it.

24         MR. RUDY:  Is that all you have for me, Your Honor?

25         THE COURT:  For now, yes.

───── 2:16-cv-00564-RFB-PAL ─────

1          MR. RUDY:  Yes.  Right.

2          THE COURT:  All right.  Who's going to be arguing for

3  the defendants in this case?

4          MR. DISKANT:  I am, Your Honor.  Greg Diskant.

5          THE COURT:  All right.  Mr. Diskant, why don't you come

6  up to the podium.

7          So, Mr. Diskant, you've heard my questions to Mr. Rudy.

8  I'm going to ask you the slight inverse of those questions; not

9  the equivalent.

10          MR. DISKANT:  Never know.

11          THE COURT:  Exactly.  There are -- these are different

12  equations as it relates to measuring the Cottrell currents.

13          MR. DISKANT:  Between White --

14          THE COURT:  Between White and your product.

15          MR. DISKANT:  Oh, yes.  Absolutely.

16          THE COURT:  I mean, they would have to be.

17          MR. DISKANT:  Absolutely.

18          THE COURT:  Right.  Otherwise, you would have a

19  separate problem, right.

20          But the question is -- I'm going to ask you is how do I

21  know -- given the fact they are separate equations, they do

22  measure different things at different times, what leads me to

23  objectively be able to determine that they are equivalent?

24  We'll get to the separate issue about what they

25  disclaim/disavowed, but let's deal with that first.

———— 2:16-cv-00564-RFB-PAL ————

1          MR. DISKANT:  Okay.  That's fine, although let me
2    state -- well, first off, you're helped enormously by the legal
3    presumptions.  I don't think there's any dispute that we're in
4    Festo territory --
5          THE COURT:  Well, but --
6          MR. DISKANT:  -- which means --
7          THE COURT:  And tangentially related is a narrow
8    exception.  I got it.
9          MR. DISKANT:  And two more very important things.
10         THE COURT:  Right.
11         MR. DISKANT:  It's their burden.
12         THE COURT:  Right.
13         MR. DISKANT:  Their burden to prove that it's
14   tangentially related.  And, lastly, it's got to be objectively
15   apparent in the file wrapper.  So there's got to be words in the
16   file wrapper that say, This amendment is unrelated to current
17   readings, for example.  And, you know, so, you know, there are
18   cases like that.  You make an amendment.  You know, they had
19   a --
20         THE COURT:  Okay.  So I got all of that, Mr. Diskant.
21         MR. DISKANT:  Okay.  Moving on.
22         THE COURT:  So I got the burden and Festo, all of that
23   presumption.  So let's --
24         MR. DISKANT:  Okay.  One more thing I want to say
25   before I get to the exact answer.

—— 2:16-cv-00564-RFB-PAL ——

1          THE COURT:  Okay.

2          MR. DISKANT:  Which is you're entirely correct that

3    White is an equivalent of ours and you can conclude that.

4    However, that's not necessary for us to win because if the prior

5    art shows essentially the equivalent of the accused product,

6    it's automatically not tangential.  But as the Federal Circuit

7    says in Integrated Technologies:  It does not follow, however,

8    that equivalents not within the prior art must be tangential.

9          THE COURT:  Right.  No --

10         MR. DISKANT:  So you don't get there either.  So -- but

11   I'm happy to engage on White because I think it's a good place

12   to sort of begin and end this discussion.

13         THE COURT:  I mean, White is a good illustrative

14   discussion of equivalents in the area, so --

15         MR. DISKANT:  Absolutely.  And tangential, and

16   tangential.

17         THE COURT:  Yes.

18         MR. DISKANT:  Okay.  So what's White?  White is a

19   different -- let me start by disagreeing very much with the idea

20   that there's just sort of a necessary relationship between

21   current and concentration.  There's not.  You buy an amp meter

22   at the hardware store and you can measure current.  That doesn't

23   tell you the concentration of anything.

24         A current is a measurement.  It's a scientific

25   measurement, but it's not like you measure the distance of a

—— 2:16-cv-00564-RFB-PAL ——

1  road in kilometers and you just multiply it and you know what it

2  is in miles.  In order to get from current to concentration, you

3  need a couple other steps.  First, you need to know the time

4  that the measurement was taken in relationship to the onset of

5  the blood sample.  Secondly, you need to have actually studied

6  the blood sample, the device.

7          Two different designed test strips will yield a

8  different current for the same concentration.  So you need to

9  design a test strip and a system to measure it with.  You need

10  to do scientific testing of that test strip to understand how

11  the relationship in that particular test strip between

12  concentration and current exists.  Then you have to collect

13  current data and time data and using this empirically-derived

14  relationship to find out the answer.  So it's complicated.  It's

15  not the same thing.  There's a relationship.  That's how you can

16  make it work, but it's not -- it's not two --

17          THE COURT:  Right, but even if there is a relationship

18  and even if it's actually established, which it would have to be

19  to some degree, otherwise calibration wouldn't work either,

20  right?

21          MR. DISKANT:  Yeah.

22          THE COURT:  That to me is not really dispositive.  It

23  seems to me they're acknowledging the fact that even with the

24  relationship, even if it's one to one, even if it's miles to

25  kilometers, there can be substantial differences as relates to

─────────2:16-cv-00564-RFB-PAL─────────

1   measuring these equations regarding current measurements versus

2   concentration measurements.  And so that's why, again, I'm

3   focussed on White --

4            MR. DISKANT:  Okay.

5            THE COURT:  -- because it's a good way to illustrate

6   potential differences.

7            MR. DISKANT:  I think that's right.  So going into the

8   file wrapper itself, what did the Examiner think about it.  So

9   they start off with a claim that's broad --

10           THE COURT:  Okay.  So, Mr. Diskant, what I want you to

11  do is focus on these particular questions.

12           MR. DISKANT:  Yes, sir.

13           THE COURT:  Because all of which you talk about, I've

14  read and gone through.

15           MR. DISKANT:  Okay.

16           THE COURT:  What I want you to help me to understand is

17  your argument about why, first, White is equivalent.

18           MR. DISKANT:  Okay.  White is based on current.  It

19  does not require a calculation of concentration.  It is a

20  current-based design.  We are a current-based design.  We're not

21  exactly the same.  But the point of the matter is that in

22  amending the claims to require taking current and converting it

23  to concentration before comparing it, the invention narrowed

24  itself to claims that compare concentrations.

25           White is based on current; so is Walling.  Basically --

 1  here's what the -- so let me show you two things from the file

 2  wrapper.

 3          THE COURT:  Okay.  No, no, no.  So what I want you --

 4  again, I want to just make sure I'm understanding this.  What

 5  you're saying is that based upon the prosecution history in this

 6  case, their sort of disavowal or what they gave up was more than

 7  simply the very specific equation from White as it relates to

 8  current, but that they generally emphasized throughout the

 9  prosecution history that theirs was a conversion to a

10  concentration and a comparison of two separate concentrations

11  after that for determination --

12          MR. DISKANT:  Right.

13          THE COURT:  -- of whether or not there is a prescribed

14  accuracy.

15          MR. DISKANT:  That's exactly right.  If you'll let me

16  show one excerpt from the file wrapper --

17          THE COURT:  Well, I just want to point out,

18  Mr. Diskant, I've read through all of it.  So I'm just saying if

19  you want to point me to what part you think emphasizes that --

20          MR. DISKANT:  Let me just show you one example.

21          THE COURT:  Okay.  Sure.

22          MR. DISKANT:  Can I have the ELMO, please?

23          THE COURT:  Sure, we'll put you over there.

24          MR. DISKANT:  And this is from page 219 of the file

25  wrapper, and I apologize for all of the scribbling on it, but

—2:16-cv-00564-RFB-PAL—

1  that's what lawyers do.

2          THE COURT:  That's all right.

3          MR. DISKANT:  So, here, this is towards of the end of

4  the prosecution history --

5          THE COURT:  And, again, I'm sorry, just for the record

6  this is from where?

7          MR. DISKANT:  This is from the file wrapper of their

8  patent, and it's towards the end of the prosecution history.  So

9  by this time the amendment's been made.  Linearly's been

10  deleted.  The Examiner has -- let me just -- it's a bit earlier.

11  The Examiner has not been terribly enthused about their White

12  arguments.  While White compares the readings to determine

13  whether it is a proper Cottrell reading by an inverse ratio of

14  the times square root, it nevertheless compares the current

15  readings.  That's what White's about, says the Examiner.

16          So here we are now -- and I'm sorry.  That was on page

17  205 of the file wrapper.

18          THE COURT:  Okay.

19          MR. DISKANT:  So now here we are 219, and now we have

20  the applicants making their arguments.  So there's Walling.

21  What's Walling do?  It takes current measurements.

22          However, what Walling doesn't do is they don't use the

23  current measurements to do concentrations.

24          THE COURT:  Right.

25          MR. DISKANT:  That operation does not convert the

—————————— 2:16-cv-00564-RFB-PAL ——————————

1  current readings to concentration readings and then compare

2  them, as in the present invention.  And the present invention is

3  often magic words in these kinds of discussions.  You know, you

4  could say an aspect of the invention, one part of the invention,

5  but this is the present invention.  This is what they invented.

6  They invented something that compares concentration measurements

7  and not, as in Walling, currents.

8          Then the next paragraph, White.  White does current

9  measurements.  And it does mention the ratios, but it says:  The

10  operation in White differs in the following respects.  And the

11  differences don't relate to the, you know, the ratios.  Here's

12  the difference.  The present invention, current readings are

13  converted into concentration measurements.  They're different

14  than currents.

15          And so then the concentration measurements are

16  compared.  That operation of the present invention is neither

17  performed nor suggested by the teachings in White.

18          So when you look objectively at the file wrapper, what

19  the file wrapper is saying is we compare currents.  Prior art

20  samples, White's the foremost one, but Walling's another,

21  they're comparing currents different ways.  You know, they're

22  all different, but they're currents.  We're not currents.  We're

23  concentrations.  And to me this is about as easy an example as

24  one can find of a straightforward file wrapper estoppel.

25          THE COURT:  Thank you, Mr. Diskant.

---2:16-cv-00564-RFB-PAL---

1          MR. DISKANT:  Thank you, Judge.

2          THE COURT:  Mr. Rudy, I'm going to give you a few final

3  minutes.  I'm just going to -- I'm going to give you a few final

4  minutes because I have to tell you I'm inclined to grant the

5  motion for summary judgment for many of the reasons that have

6  just been outlined by the plaintiffs.  So to the extent that you

7  can rebut anything that's been presented -- and part of that has

8  to do with the issue of the presumption and the burden and the

9  Court weighing that, but also the part of the record that

10  Mr. Diskant just pointed out as it relates to arguments and the

11  amendments and prosecution history.

12          So I will give you a few moments to try to dissuade me.

13          MR. RUDY:  Sure.  In the file history, Your Honor --

14          THE COURT:  So here's what will be helpful.  Can you

15  point to portions of the record or anywhere in the prosecution

16  history where your client raises or speaks in the specific

17  limiting way with respect to electric, sort of, current

18  measurement that you have articulated in your submissions?

19  Because that's -- the difficulty is what you're saying about how

20  limited these amendments are, narrow they are, and what was

21  argued is slightly different than the language used by your

22  client throughout the prosecution history.

23          So can you point to sections where it focuses on not

24  just a measurement of current and whether or not the measurement

25  of current is converted to analyte concentration measurements,

—2:16-cv-00564-RFB-PAL—

1    but talks about the actual equations themselves?

2          MR. RUDY:  Sure, Your Honor.  In the very next page of

3    the file history office action that counsel just referred to.

4    And if I could bring up ELMO.  I don't know if it's up or not.

5          THE COURT:  It's not.  Blanca?  Oh, there we go.  Okay.

6          MR. RUDY:  Counsel made reference to this and placed

7    some curious --

8          THE COURT:  Well, let's --

9          MR. RUDY:  -- emphasis on that.  But the very next

10   page, Your Honor, which he didn't go into, discusses what we

11   were talking about.

12         Again, it's underlined.

13         THE COURT:  That's okay.

14         MR. RUDY:  In White, the ratio of the measured Cottrell

15   currents is evaluated and does not disclose this first and

16   second Cottrell reading.  I am looking for an earlier amendment

17   and I will get this in just a moment, Your Honor.

18         THE COURT:  Sure.  Take a second.

19         MR. RUDY:  All right.  So am I on ELMO?

20         This is the Office Action Response -- responsive to the

21   rejection that was cited in White.

22         THE COURT:  Okay.  What date is -- I'm sorry.  Which --

23         MR. RUDY:  This is the September 1999 --

24         THE COURT:  Okay.

25         MR. RUDY:  -- amendment.  And right here White compares

1 the readings to determine whether it is proper by this inverse

2 ratio of the times square root.  This was repeated throughout

3 this Office Action Response and in the subsequent response where

4 they were arguing for patentability and focuses just on that

5 Equation 5.

6            And I --

7            MR. DISKANT:  Can you slide that up, Phil?  I can't see

8 the whole thing.  Thank you.

9            THE COURT:  But this is not -- I'm sorry.  This is from

10 the amendment that was submitted or this is from the Patent

11 Office?

12            MR. RUDY:  No, this is an Office Action Response.

13            THE COURT:  Okay.  I couldn't -- I just couldn't --

14            MR. RUDY:  Oh, I beg your pardon.  This is an office

15 action.  I pulled up the one wrong.  Just give me -- indulge me

16 just a minute, Your Honor.

17            Here it is.  Okay.  I now have what I was looking for.

18 This is the September 27, 1999, first response to the rejection

19 involving White.  So right here White -- it says:  Confirms

20 Cottrell readings by evaluating the inverse square root of the

21 times ratio.  And that is talking about this Equation 5.  And

22 that is -- in the next paragraph White discloses:  Determining

23 the Cottrell reading as something proper by the complicated

24 mathematical inverse ratio of the times square root.  That was

25 Equation 5 that we had up.

────── 2:16-cv-00564-RFB-PAL ──────

1          And so they were saying our -- our invention was such

2    and so.  We first convert to concentration -- compare

3    concentration, and it's different than White not simply because

4    we do that, but for the very specific reason that White takes an

5    approach --

6          THE COURT:  Hold on just a moment.

7          MR. RUDY:  Yes.

8          (Court conferring with courtroom administrator.)

9          THE COURT:  I'm sorry, Mr. Rudy.

10         MR. RUDY:  -- White takes this Equation 5 approach.

11   And so if there was a disavowal, it was limited to Equation 5,

12   and that's our position.  And we think that's what somebody

13   looking at the file history would conclude.  I would also --

14         THE COURT:  Because, again, I just want to make sure

15   because we have different places in the record.  Where is this

16   again?  I want to make sure I'm looking ...

17         MR. RUDY:  It's the Office Action Response dated

18   September 27, 1999.

19         THE COURT:  Perfect.  Okay.

20         MR. RUDY:  All right.  And, again, that was the first

21   response to the rejection involving White.  And here's the

22   important thing.  We clearly drew this distinction on -- about

23   White on the grounds that the claimed invention conducted this

24   multiple analysis of -- reading analysis according to Equation

25   5, but we never said that the inventive analysis could not be

———— 2:16-cv-00564-RFB-PAL ————

1   performed by comparing current.  The applicant didn't have to

2   distinguish on that basis because none of the prior art

3   disclosed their equivalent.

4        And this is not an inventive aspect of the invention,

5   that is, comparing current versus comparing concentration.  That

6   wasn't part of the discussion at all.  The fact that the claimed

7   system started with analyte concentrations was not inventive.

8   Many prior art exclusions analyzed analyte concentrations.

9   Here, the inventive aspect was the manner in which the analysis

10  was conducted; not whether it started with a current comparison

11  versus an analyte comparison.  That wasn't discussed, nothing

12  about that.

13       And the fact that we said the present invention, that's

14  somehow code, that's not --

15       THE COURT:  No, I'm not -- no, that's not the issue.

16       MR. RUDY:  Okay.

17       THE COURT:  The issue is whether or not in referencing

18  sort of the general difference in response to the agency

19  action --

20       MR. RUDY:  Sure.

21       THE COURT:  -- that what you're basically -- your

22  client, the applicant, was indicating was that we are different

23  because we're not even focussed on current at all.  And that's

24  what the language that Mr. Diskant pointed to.

25       But I will go back, Mr. Rudy.  I think that you've

——— 2:16-cv-00564-RFB-PAL ———

1  given me the record that you think best supports the position

2  you're taking, and I'll go back and look at that again.

3          MR. RUDY:  So in a word, the current readings and the

4  analyte readings are, as we said, they're proportional.  And if

5  you look at their motion to dismiss, they admit that.  So ...

6          THE COURT:  Right.  But, again, that's not dispositive

7  because they're related, but there are different -- their

8  relationship is so different that obviously people can patent

9  different aspects of measuring even that established

10 relationship so --

11         MR. RUDY:  But as far as the objectively apparent

12 reason?

13         THE COURT:  Right.

14         MR. RUDY:  Nothing was said about inventiveness one way

15 or the other, whether you start with comparing currents or start

16 with comparing concentrations.  The record is devoid of that

17 kind of a distinction.  And, therefore, granting their motion

18 for summary judgment we believe would be not proper, so ...

19         THE COURT:  Thank you, Mr. Rudy.  I will go back and

20 look at the record, the cites, that you all have done and

21 reconsider your briefs.  I appreciate the arguments of counsel.

22 It's been helpful, but we're adjourned on this matter.  Thank

23 you.

24         MR. RUDY:  Thank you, Judge.

25         MR. DISKANT:  Thank you.

─────2:16-cv-00564-RFB-PAL─────

1    (Whereupon the proceedings concluded at 10:58 a.m.)

2         --oOo--

3      COURT REPORTER'S CERTIFICATE

4

5    I, PATRICIA L. GANCI, Official Court Reporter, United

6 States District Court, District of Nevada, Las Vegas, Nevada,

7 certify that the foregoing is a correct transcript from the

8 record of proceedings in the above-entitled matter.

9

10 Date:  January 3, 2018.

11         /s/ **Patricia L. Ganci**

12         Patricia L. Ganci, RMR, CRR

13         CCR #937

14

15

16

17

18

19

20

21

22

23

24

25